**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**MANUEL COOPER**                                                                            **PETITIONER**

**V.**                                                    **CIVIL ACTION NO.: 3:14CV119-SA-RP**

**MARSHALL FISHER and
ATTORNEY GENERAL OF THE STATE OF MISSISSIPPI**         **RESPONDENTS**

**MEMORANDUM OPINION AND ORDER**

The United States Court of Appeals for the Fifth Circuit remanded this case for a determination as to whether Petitioner Manuel Cooper is entitled to equitable tolling of the one-year limitations period applicable to his federal habeas petition. *See* 28 U.S.C. § 2244(d). On May 24, 2017, the Court held an evidentiary hearing where it heard witness testimony and received evidence relevant to that issue. The Court now finds, for the reasons that follow, that Cooper is entitled to have the one-year limitations period equitably tolled.

**Statute of Limitations**

Because Cooper filed his § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), his petition is governed by the provisions of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320 (1997). A petition filed under the AEDPA must comply with the statute's one-year period of limitations, which runs from the latest of four events, the ordinary triggering event being the date on which the judgment of conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A). The limitations period is statutorily tolled while a properly filed motion for state post-conviction relief is pending. 28 U.S.C. § 2244(d)(2). However, statutory tolling aside, the standard is not inflexible, and the limitations period may

also be equitably tolled "in rare and exceptional circumstances." *United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000).

Manuel Cooper was convicted of one count of false pretense in the Circuit Court of DeSoto County, Mississippi, and was sentenced on June 2, 2009, as an habitual offender to serve life in the custody of the Mississippi Department of Corrections ("MDOC"). Cooper was represented by the Office of Indigent Appeals on direct appeal, and his conviction and sentence were affirmed by the Mississippi Supreme Court. Cooper's conviction became "final" for purposes of the AEDPA on November 23, 2011 – 90 days after certiorari was denied by the Mississippi Supreme Court on August 25, 2011. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (holding that where a defendant does not seek certiorari review, finality is established by the expiration of the 90 day period to seek such review with the Supreme Court); *see also* 28 U.S.C. § 2244(d). Cooper did not submit a properly filed post-conviction application to toll the federal limitations period. Therefore, the federal habeas deadline date was November 23, 2012.

### Equitable Tolling

Cooper's federal habeas petition was signed on May 1, 2014, and it was stamped "filed" on June 2, 2014. Doc. #1 at 1, 14. Either date is well past the one-year deadline. However, Cooper may be entitled to an equitable tolling of this period if he can demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks and citation omitted).

The diligence required by a petitioner in the equitable tolling consideration is "reasonable diligence," which is a "fact-intensive inquiry" resolved by comparing this petitioner's diligence

to the diligence shown by other petitioners in similar circumstances. *Holland*, 560 U.S. at 653-54; *Palacios v. Stephens*, 723 F.3d 600, 605 (5th Cir. 2013) (comparing petitioner's diligence with that shown of petitioners in similar circumstances). Diligence in pursuit of one's remedies is a requirement independent of his attorney's efforts. *See, e.g.*, *Palacios*, 723 F.3d 600, 605 (noting petitioner seeking to establish due diligence must exercise diligence even when he receives inadequate legal representation) (citing *Manning v. Epps*, 688 F.3d 177, 185 (5th Cir. 2012)). Such "[d]iligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize" that he should act. *Johnson v. United States*, 544 U.S. 295, 308 (2005); *see also Palacios*, 723 F.3d 600, 605 (noting petitioner's knowledge of deadline and failure to act relevant to reasonable diligence analysis).

In reviewing whether "extraordinary circumstances" exist, the issue is "not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for th[is] prisoner[.]" *Diaz v, Kelly*, 515 F.3d 149, 154 (2nd Cir. 2008). An attorney's deceit concerning his efforts to obtain relief on the client's behalf, and the client's reliance upon the attorney's misrepresentations, may constitute extraordinary circumstances warranting equitable tolling. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding attorney deception in convincing prisoner he has filed timely motion for post-conviction relief presents rare and extraordinary circumstance which is beyond prisoner's control and which may warrant equitable tolling of the one-year limitations period); *Vineyard v. Dretke*, 125 F. App'x 551, 552-54 (5th Cir. 2005) (finding equitable tolling may be appropriate where attorney lied and said that the state motion was pending, and petitioner diligently filed his § 2254 motion within weeks after learning that the attorney had never filed it).

Additionally, instances of "professional misconduct" by an attorney, such as failure to communicate with his client, may constitute an extraordinary circumstance warranting equitable tolling if the misconduct is not a "garden variety claim of excusable neglect," but rather is such that it amounts to "egregious behavior" that amounts to attorney abandonment. *See Holland*, 560 U.S. at 649-53; *Maples v. Thomas*, 565 U.S. 266, 283 (2012) ("[U]nder agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his on behalf when he lacks reason to believe his attorneys. . . are not representing him.").

**Background & Evidence Adduced at Hearing**

Following the denial of certiorari in his case by the Mississippi Supreme Court on August 25, 2011, Cooper filed a *pro se* "Motion for Leave to Proceed in the Trial Court" in the Mississippi Supreme Court. Doc. #10-3. By order filed September 28, 2011, the Mississippi Supreme Court dismissed the motion without prejudice, finding that Cooper failed to attach to it a motion for post-conviction relief. Doc. #10-4. Cooper did not resubmit his motion with the motion for post-conviction relief attached. At his federal evidentiary hearing, Cooper stated that he had a third grade education, and his attorney argued that Cooper's failed attempt to proceed *pro se* demonstrated to him his inability to navigate the post-conviction process without an attorney's assistance. Subsequently, on or about November 14, 2011, Cooper's family — his sister, Dovie Girton, and his niece, Carol Harrison — retained the services of John McNeal, an attorney who has been in the practice of law for approximately forty years, to "look into an appeal" on Cooper's behalf. Pl.'s Ex. 1.

At the evidentiary hearing, Harrison testified that she and Dovie each initially contributed

4

$2,000 (for a total of a $4,000 retainer) for McNeal's review of Cooper's file, with the understanding that McNeal would be paid a total of $9,000 to pursue post-conviction relief on Cooper's behalf. She stated that McNeal advised that he did not require the additional $5,000 up front, however, and that the additional funds would only be required when the case went to court. McNeal, on the other hand, testified that he requested and received an $8,000 flat-rate fee for reviewing Cooper's file, with the understanding that additional payment would be required for him to file a post-conviction petition on Cooper's behalf. According to McNeal, and confirmed by Cooper and his family, this fee arrangement was not memorialized in a contract or a letter.

Cooper claims he first met with McNeal in February 2012, and that he turned over all of his legal documents to McNeal at that time. Doc. #11 at 25. McNeal stated that he initially thought that Cooper might be able to raise an ineffective assistance of counsel claim on post-conviction review, and he stated that Cooper and his family were advised that McNeal's pursuit of the post-conviction action would require additional payment of $5,000. In a March 15, 2012 letter to Cooper that was copied to Girton, McNeal stated that he was prepared to file a post-conviction application on Cooper's behalf "upon payment of the balance of [the] retainer in the amount of $5,003.00" Pl.'s Ex. 2. Cooper claimed that he contacted Girton to arrange for McNeal to be paid. On March 28, 2012, Cooper's family sent $4,000 in money orders to McNeal. Pl.'s Ex. 8. According to testimony given by Cooper's niece, Carol Harrison, McNeal never contacted either Harrison or Girton again after they sent him the money orders.

McNeal denied having received any money from Cooper or his family members aside from the initial $8,000 retainer, and he testified that he had drafted preliminary pleadings and

5

was ready to file a post-conviction action on Cooper's behalf upon payment of his retainer. He admitted, however, that he never wrote Cooper after March 2012 to advise him that his retainer had not been fully satisfied, and he did not send Cooper any correspondence advising him that he would not file an action on Cooper's behalf without additional payment.

Throughout McNeal's representation of Cooper, Cooper sent letters to McNeal, though some of the letters were incorrectly addressed and presumably never reached McNeal, wherein Cooper requests information from McNeal regarding the status of his case and asks for copies of his legal documents. *See, e.g.*, Pl's Ex. 5 &7. In these letters, Cooper references having spoken with McNeal and received McNeal's assurances that he would file for post-conviction relief on Cooper's behalf by specific dates. *Id*. Cooper testified similarly, stating that McNeal had falsely informed him on more than one occasion that pleadings would be filed on his behalf by certain dates. McNeal, conversely, denied that he ever made any such assurances to Cooper.

On July 5, 2013, in response to correspondence from Cooper to McNeal, McNeal wrote to Cooper, stating that he was seeking to have the warden approve a visit with Cooper the week of July 7-13, 2013, concerning "the status of [McNeal's] efforts to obtain post-conviction relief for [Cooper], and noting that McNeal had "numerous pieces of information that conflict with [Cooper's] memory" concerning Cooper's perception that McNeal was neglecting Cooper's case. Pl.'s Ex. 3. McNeal testified that the potential ground for pursing federal habeas relief — Cooper's sentencing under the more severe habitual offender statute — was not known to him until July 2013, past the expiration of the federal deadline. He stated that he had hoped to secure equitable tolling of the federal habeas deadline under the basis of new factual developments, and that he was still actively working on Cooper's case in July 2013. McNeal testified that the three

6

letters he wrote to Cooper, dated November 14, 2011; March 15, 2012; and July 15, 2013, respectively, were the only written correspondence he made to Cooper.

In a properly-addressed letter to McNeal dated August 9, 2012, Cooper advised McNeal that he received a copy of his docket sheet from the appellate court and noted that it reflected that no post-conviction action had been filed. Pl.'s Ex. 6. Cooper reminded McNeal that he had a one-year federal deadline and requested a copy of the post-conviction petition that was to be filed on his behalf before September 20, 2012. *Id*. In the letter, Cooper also claimed that he had paid McNeal's fee in totality, and that McNeal had refused to contact Cooper. *Id*. He stated that McNeal was "neglecting [his] obligations" and advised him to mail in the paperwork that week or else Cooper would file a bar complaint. *Id*. In December 2012, Cooper wrote the Clerk of the United States District Court for the Northern District of Mississippi seeking information regarding whether his attorney had filed a federal habeas petition on his behalf. Doc. #11 at 39.

McNeal testified that his representation of Cooper ended when Cooper filed a complaint against him with The Mississippi Bar, an event that occurred in October 2013[1], and that he returned Cooper's legal documents and materials to him at that time. Cooper, however, testified that he never received his legal materials from McNeal. While Cooper's complaint against McNeal was pending with The Mississippi Bar, he filed an "Application for Leave to Proceed to the DeSoto County Circuit Court" in the Mississippi Supreme Court on February 18, 2014. Doc. #10-5. On April 11, 2014, the Mississippi Bar dismissed the bar complaint against McNeal. Doc. #1 at 24. With his post-conviction motion still pending, Cooper's federal habeas petition was signed on May 1, 2014, and it was stamped "filed" on June 2, 2014. Doc. #1 at 1, 14. On

---

[1] *See* Doc. #1 at 20.

May 14, 2014, the state court denied the post-conviction motion, holding that the issues raised therein were barred and without merit. Doc. #10-6. Cooper filed for rehearing from the decision on May 27, 2014, but the petition was denied on June 17, 2014. Doc. #10-7. McNeal's federal habeas petition was dismissed as time-barred on October 7, 2014. Doc. #12.

## Discussion

In remanding this case, the Fifth Circuit directed this Court to make factual findings regarding "(1) whether McNeal was in fact paid in full, (2) McNeal's alleged misrepresentations to Cooper regarding the status of his habeas proceedings, and (3) the reasonableness of Cooper's reliance on those representations." *See* Doc. #29-1 at 6. Despite having held an evidentiary hearing where it reviewed exhibits and heard testimony, the Court is still unable to determine whether McNeal was fully paid his retainer agreement to file post-conviction or collateral actions on Cooper's behalf. The Court finds, pursuant to McNeal's testimony and the testimony of Cooper's niece, that McNeal was paid $8,000 to represent Cooper. What that fee represented, whether it was merely for file review or for filing Cooper's petition, is uncertain. What is certain, however, is that McNeal requested an additional $5,003 from Cooper in March 2012 to **file** a petition for post-conviction relief on Cooper's behalf, and that days after that letter was sent, McNeal was paid an additional $4,000.

The Court finds it unlikely that the $4,000 paid to McNeal in March 2012 was in satisfaction of any initial fee still owed by Cooper. Rather, it appears that the funds were sent in response to McNeal's request for payment to actually file the petition. McNeal, of course, did not file any legal pleadings on Cooper's behalf, nor did he apparently refund any portion of the money paid after the March 2012 letter was sent to Cooper. Additionally, at no point after the

8

additional $4,000 was sent to McNeal in March 2012 did McNeal write to Cooper informing him that he would not file any paperwork on Cooper's behalf unless he was paid more money.

Rather, McNeal considered himself Cooper's attorney until October 2013, when Cooper filed a bar complaint against him. Until that time, McNeal apparently actively investigated Cooper's case and suggested to him that there was a possible ground for filing an out-of-time petition. Earlier, as evidenced by his August 2012 letter to McNeal, written months before the expiration of the federal habeas deadline, Cooper requested that McNeal send him copies of all of his legal documents and prepared pleadings. *See, e.g.*, Doc. #11 at 37. McNeal apparently sent no return correspondence upon his receipt of this letter, and McNeal testified that he retained Cooper's legal materials until October 2013. Moreover, in a December 2012 letter to this Court, after the federal deadline had expired, Cooper asked the Clerk to confirm whether his attorney had filed a federal habeas petition on Cooper's behalf. Doc. #11 at 39. Therefore, the Court finds that Cooper regularly attempted to contact his attorney and attempted to communicate with the state and federal courts to inquire into the status of his case.

Additionally, Cooper stated that after he missed the federal deadline, he knew that he needed documentation of his attorney's conduct in order to obtain equitable tolling, which is why he waited until his complaint was resolved by The Mississippi Bar prior to filing for federal habeas relief. The Court finds that explanation borne out by the record in this case, as Cooper's federal habeas petition was filed within weeks of The Mississippi Bar's decision.

Based on the totality of the record before it, the Court finds that McNeal was diligently retained by Cooper, that he did lead Cooper to believe that he would file a state post-conviction petition on Cooper's behalf, that Cooper's reliance on McNeal's representations were reasonable

9

given McNeal's continued investigation of Cooper's case and the retention of Cooper's legal materials, and that Cooper attempted to diligently pursue his claims once he learned that a federal petition had not, in fact, been filed.  Cooper, an individual with a third-grade education who had given all of his legal materials to an attorney to whom his family had paid at least $8,000, repeatedly attempted to contact his attorney and the courts to inquire about the status of his legal proceedings and was informed by his counsel that steps were being taken to secure review of his case.  Alone, factors such as Cooper's poor education and unfamiliarity with the law or his attorney's retention of his legal materials, might not warrant equitable tolling.  *See, e.g., Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000) (holding "**mere** ignorance of the law . . .. is insufficient to warrant tolling) (emphasis added); *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002) (holding incorrect calculation of statute of limitations "**by itself**" does not excuse failure to comply with the limitations period) (emphasis added).  However, the Court finds that these factors, in combination with McNeal's own actions to create Cooper's reliance upon him, converge to create rare and exceptional circumstances in this case that warrant equitable tolling in this case.

## Conclusion

For the reasons set forth herein, Manuel Cooper is entitled to equitable tolling of the federal statute of limitations.  Respondents must answer the petition on its merits on or before July 24, 2017.

**SO ORDERED** this 2nd day of June, 2017.

/s/ Sharion Aycock  
**U.S. DISTRICT JUDGE**
